```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK



----------------------------X
                            :
WINDWARD BORA LLC,          :
                            :   19-CV-4601 (RRM)(JO)
              Plaintiff,    :
                            :   January 22, 2020
                            :
              V.            :   Brooklyn, New York
                            :
VADIM BORODYANSKY, et al.,  :
                            :
              Defendant.    :
----------------------------X


     TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
        BEFORE THE HONORABLE JAMES ORENSTEIN
           UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:        RAFI HASBANI, ESQ.




For the Defendant:        CHRISTOPHER VILLANTI, ESQ.


Audio Operator:


Court Transcriber:        ARIA SERVICES, INC.
                          c/o Elizabeth Barron
                          102 Sparrow Ridge Road
                          Carmel, NY 10512
                          (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Civil cause for pretrial

2   conference, Windward Bora LLC v. Borodyansky, et al.,

3   docket number 19-CV-4601.

4          Would you both please state your appearances

5   for the record, starting with the plaintiff.

6          MR. HASBANI:  Good morning, your Honor.

7   Rafi Hasbani from Hasbani & Light, attorney for the

8   plaintiff.

9          THE COURT:  Good morning.

10          MR. VILLANTI:  Christopher Villanti, Petroff

11   Amshem LLP, for defendants Borodyansky and Rytova.

12          THE COURT:  Good morning.

13          I have your letter from January 13th asking

14   to reopen discovery.  I don't understand, you sent

15   discovery to the wrong address and then didn't follow

16   up for months?

17          MR. HASBANI:  Well, we sent it and it didn't

18   come back to us for about a month and a half, so we

19   were under --

20          THE COURT:  So all that time, you just

21   thought, it's overdue but --

22          MR. HASBANI:  It wasn't overdue.  They were

23   still within their time to repsond.

24          THE COURT:  A month and a half later, they

25   were still within thirty days?

```
1              MR. HASBANI:  Maybe a little bit -- it took
2    about -- just over -- sorry, not a month and a half.
3    We mailed it out on November 21st.
4              THE COURT:  Whoa, wait, stop.  You mailed it
5    out on November 21st?
6              MR. HASBANI:  That was our deadline to serve
7    discovery.
8              THE COURT:  All right, okay, November 21st.
9              MR. HASBANI:  And it was returned by mail on
10   December 24th.
11             THE COURT:  And all that time, you're not in
12   touch with them.  And you didn't say, hey, where's your
13   discovery?
14             MR. VILLANTI:  I didn't, your Honor.  Just
15   speaking frankly, and I don't think my adversary would
16   disagree, in foreclosure, it's not that uncommon to not
17   do formal discovery, so I didn't really think anything
18   of the fact that -- especially from a bank to a
19   borrower, so I didn't think anything was out of the
20   ordinary when I didn't get any demands.  I know I
21   served my demands on November 15th, including by email
22   and mail.  So when I didn't get anything by email, I
23   assumed that they just weren't serving demands on me.
24             THE COURT:  What do you need?
25             MR. HISBANI:  Well, they're claiming that
```

1  they have this letter that accelerated the loan.  We

2  don't have it.

3          MR. VILLANTI:  As I indicated last time --

4          THE COURT:  Just yes or no, do you have the

5  letter?

6          MR. VILLANTI:  I don't have it right now,

7  although when I finally --

8          THE COURT:  Not right now.  How long --

9  you've been talking about or your clients have been

10 talking about this letter for a long time.  Where is

11 it?

12         MR. VILLANTI:  They don't have it.  At least

13 I don't have it.  If they do have it, they haven't

14 given it to me yet.

15         THE COURT:  Call them up and find out where

16 it is.

17         MR. VILLANTI:  I called them when we finally

18 did get the demands to say, we just got these, we need

19 to figure it out because, technically, discovery ends

20 in a week.  By the time I got them and called them,

21 they were out of the country.  They just returned

22 Monday night so they're now --

23         THE COURT:  They didn't have phones where

24 they were.

25         MR. VILLANTI:  No, they do, but they don't

1   have access to documents.  I did call them while they

2   were --

3             THE COURT:  Mr. Villanti -- I was about to

4   use a phrase I should not in a courtroom to describe

5   what that is.  This issue has been with you for years.

6             MR. VILLANTI:  Not for years.

7             THE COURT:  How long?

8             MR. VILLANTI:  For months, a couple of

9   months.

10            THE COURT:  A couple of months?  And in

11  state court, how long?

12            MR. VILLANTI:  Also, it was filed in 2019.

13            THE COURT:  How long ago in 2019?

14            MR. VILLANTI:  I have a copy of the summons

15  and complaint.

16            THE COURT:  But how long has it been since

17  your clients have said, we've got this letter?

18            MR. VILLANTI:  I don't know the exact number

19  of months.

20            THE COURT:  Did I ask you for the exact

21  number?

22            MR. VILLANTI:  I'm not -- I'm not sure, your

23  Honor, when we filed it.  It was definitely in 2019, I

24  just don't remember which month it was.  I have a copy

25  of --

1          THE COURT:  All that time, you've never

2     said, look, if we're going to rely on this, I need to

3     see it.

4          MR. VILLANTI:  I absolutely said that.  I

5     absolutely said that.  And what I explained to them was

6     -- on a couple of occasions was, understand that --

7          THE COURT:  Okay, let's do this.

8          MR. VILLANTI:  Sorry.

9          THE COURT:  He'll have it in his hands

10    tomorrow or it doesn't exist.  Fair enough?

11         MR. VILLANTI:  I suppose that's fair enough.

12    I'll call them when we get back to the office.

13         THE COURT:  And you'll stipulate that you

14    can't -- it doesn't exist if you can't get it to him by

15    tomorrow.

16         MR. VILLANTI:  I mean, if the Court orders

17    that, I'll obviously comply.  I would prefer not to

18    stipulate to something like that but --

19         THE COURT:  What's the date by which it will

20    be in his hands or you agree that it doesn't exist?

21         MR. VILLANTI:  If I could get the normal

22    twenty days of discovery that I would normally get if

23    they had served timely.

24         THE COURT:  You've had months.  Come on,

25    seriously.

1         MR. VILLANTI:  I understand that, your
2   Honor.
3         THE COURT:  How long does it take your
4   clients to find it?
5         MR. VILLANTI:  A week?  Can you give me a
6   week?
7         THE COURT:  Why?  They either have it or
8   they don't.
9         MR. VILLANTI:  I understand that, your
10  Honor.  They're just getting back into the country.
11        THE COURT:  Get them on the phone right now.
12        MR. VILLANTI:  I don't have their number on
13  me, with me.
14        THE COURT:  Are you kidding me?
15        MR. VILLANTI:  I don't have their phone
16  number accessible to me in my cell phone right now.
17        THE COURT:  Who does?
18        MR. VILLANTI:  I could call my office.
19        THE COURT:  Get it.
20        MR. VILLANTI:  No problem.  Should I step
21  out?
22        THE COURT:  Do it here if you like.  We're
23  not going to have this nonsense where you're pointing
24  at people that you can't reach to offer an excuse for a
25  document that they've been talking about for months.

1              MR. VILLANTI:  Understood.

2              THE COURT:  While he's calling, is there

3     anything else that you're looking for, or is it just

4     that?

5              MR. HASBANI:  Mainly just that, your Honor.

6     The state action --

7              THE COURT:  Anything else, you should have

8     taken care of.

9              (Mr. Villanti is calling his office.)

10             THE COURT:  Let me make clear, Mr. Villanti,

11    you're free to stay here but also, if you wish to have

12    privacy, please use the conference room.

13             MR. VILLANTI:  Sure, thank you, your Honor.

14             THE COURT:  Any objection to me talking

15    settlement with Mr. Hasbani while you're doing that?

16             MR. VILLANTI:  No, none whatsoever.

17             (Mr. Villanti exits the courtroom.)

18             THE COURT:  All right, what do you really

19    want, Mr. Hasbani?

20             MR. HASBANI:  Per my --

21             THE COURT:  You're not getting what's in

22    your letter and that's clearly not where you would

23    settle.  What's really going to settle it?

24             MR. HASBANI:  I don't know if they're

25    looking to get a full (ui) payout and make a payment in

1  one shot or are they looking to modify?

2          THE COURT:  Well, give me options.  What

3  would you take?

4          MR. HASBANI:  We're available -- we're open

5  to both.

6          THE COURT:  Yes, I'm sure you are.  Give me

7  the specifics.

8          MR. HASBANI:  The current authority that we

9  have is what I've put in my letter.

10          THE COURT:  But what's the real authority?

11  Come on.

12          MR. HASBANI:  That is the real authority

13  that I have right now.

14          THE COURT:  So about $4,800 monthly over

15  five years, $5,000 down payment.  What does "cash for

16  keys" mean?

17          MR. HASBANI:  Cash for keys would be, give

18  him money to move out of the property, a deed in lieu.

19          THE COURT:  Say again?

20          MR. HASBANI:  It's basically a deed in lieu.

21  We give them -- they forfeit the property --

22          THE COURT:  Oh, I see.

23          MR. HASBANI:  -- in total forgiveness of the

24  loan and we give them --

25          THE COURT:  Okay, so that's a separate

1   option.

2   MR. HASBANI:  Yeah.

3   THE COURT:  Got it.

4   MR. HASBANI:  We would give them $10,000 and

5   moving costs.

6   THE COURT:  Okay.  The loan was originally

7   for how much, 400-some-odd?

8   MR. HASBANI:  Yes.  I can pull up the exact

9   amount.

10   THE COURT:  And they've made payments or no?

11   MR. HASBANI:  Payments were made.

12   THE COURT:  How much have they paid

13   altogether so far?

14   MR. HASBANI:  Just give me one second to

15   pull up the payment history.  Towards the principal --

16   THE COURT:  No.  What have they paid?

17   MR. HASBANI:  Oh, fully?  I don't have that

18   information.

19   THE COURT:  Why not?  You don't have it,

20   okay?

21   MR. HASBANI:  The loan has been in default

22   since --

23   THE COURT:  How much have they paid in

24   principal so far?

25   MR. HASBANI:  In principal, they've paid

1  roughly $12,000.

2         THE COURT:  Okay, because most of it has

3  been interest.

4         MR. HASBANI:  Yes.

5         THE COURT:  Any idea ball park how much

6  interest they've already paid you, not you but your

7  predecessor?

8         MR. HASBANI:  No.  I guess they were current

9  on the loan for about nine years.

10         THE COURT:  Nine years?  With a roughly

11  payment of what?

12         MR. HASBANI:  I believe it was roughly

13  around $2,500 or #3,000.

14         THE COURT:  Okay, let's call it $2,500.  So

15  at that rate, they've already paid in $270,000.

16         MR. HASBANI:  Mm-hmm.

17         THE COURT:  How much did your clients pay

18  for this asset?

19         MR. HASBANI:  They never disclose that

20  information to the attorneys.

21         THE COURT:  Find out.  Call up and find out.

22         MR. HASBANI:  I can get that information.

23         THE COURT:  Yeah.

24         MR. HASBANI:  But they usually never

25  disclose that to us.

```
1              THE COURT:  Okay.  I'll assume it's zero
2    unless you want to tell me otherwise.  You're willing
3    to accept -- the original principal was how much?
4              MR. HASBANI:  408.
5              THE COURT:  408, but you're willing to
6    accept 469 after they've paid --
7              MR. HASBANI:  Well, it's been accruing
8    interest, your Honor --
9              THE COURT:  Yeah, I get it.
10             MR. HASBANI:  -- for about seven years.
11             THE COURT:  So you'll generously -- can I
12   speak in front of him or no?
13             MR. HASBANI:  Sure.
14             THE COURT:  You'll generously accept 469,000
15   to pay off a loan of 408,000, after they've already
16   paid about a quarter of a million dollars.  And you
17   won't tell me what your client paid for the loan.
18             MR. HASBANI:  I didn't say I wouldn't tell
19   you, I said I do not have that information.
20             THE COURT:  Your client won't tell me.
21             MR. HASBANI:  Okay.
22             THE COURT:  If you want, go out and call
23   them and say, I want to know.
24             MR. HASBANI:  Okay.
25             THE COURT:  When is he going to have the
```

1  document?

2          MR. VILLANTI:  If it's possible to give us

3  until the end of the week.  Then at that point, if I

4  don't have it, I'll go by whatever they produce.  They

5  produced -- I got their stuff yesterday.  I haven't

6  fully looked through it.  Just thumbing through before

7  we started here today, I saw for example a 2013 letter

8  that referenced the full charge-off.  I saw a 2016

9  letter that references acceleration specifically.  So I

10  need to look fully at what they produced and then other

11  than that --

12          THE COURT:  You're going to rely on it's by

13  Friday or it doesn't exist.

14          MR. VILLANTI:  I understand, your Honor.

15  Otherwise, we will absolutely be bound by whatever they

16  produce and what I have.  If it's not six years before

17  this action, then we will withdraw that counterclaim.

18          THE COURT:  What are you willing to do to

19  settle?

20          MR. VILLANTI:  I spoke to Mr. Borodyansky

21  when he -- right before he got back into the country

22  actually.  What I indicated in the letter that was

23  emailed to you is what he can do.  If you're in

24  foreclosure, you basically settle one of two ways:

25  Either you fully pay off, which rarely happens.

```
1              THE COURT:  Right.

2              MR. VILLANTI:  Or reinstate, for example,

3    although I don't think that's ever -- I don't know what

4    the reinstatement figure even is.  Otherwise, you do a

5    short payoff, where you pay less than what's fully owe

6    and that's accepted in full satisfaction, or you do a

7    modification.  He's willing to do both.  If he does a

8    modification, he said he can really only afford up to

9    $1,700 a month.  I don't know if that covers -- it's

10   not a huge loan but it's not insignificant.  As far as

11   a short payoff, he basically said if he had to pay

12   today, he could do 60,000.  If they gave him between

13   thirty to sixty days, he could get up to 120,000, and

14   that's what he can do.

15             THE COURT:  All right, let's wait for him to

16   come back.

17             (Pause in proceedings.)

18             MR. VILLANTI:  Your Honor, I'm sorry.  With

19   regard to any -- going forward on discovery

20   specifically, the only thing I'm concerned about given

21   that I just got the responses yesterday is to the

22   extent that I feel that they're inadequate.  For

23   example, I looked at --

24             THE COURT:  If it's about discovery, let's

25   not talk ex parte.
```

```
1              MR. VILLANTI:  Fair enough.

2              THE COURT:  The offer you've described, the

3    short payout or the reinstatement, the restructuring,

4    they're not going to accept either of those numbers.

5    You know that, right?

6              MR. VILLANTI:  I'm familiar with this

7    particular investor so I'm sure that they're not going

8    to accept it.

9              THE COURT:  Do you want to talk about

10   something that they might accept or it's take it or

11   leave it?

12             MR. VILLANTI:  It unfortunately has to be

13   that because it's not even a situation where that's the

14   starting figure and we can work up.

15             THE COURT:  That's really it.

16             MR. VILLANTI:  I asked him, what's the max

17   you could really do.

18             THE COURT:  All right, so you're prepared to

19   walk out of here without a settlement.

20             MR. VILLANTI:  I'd prefer not to but,

21   unfortunately, I have to, if that's the case.

22             THE COURT:  All right.

23             (Pause in proceedings.)

24             MR. HASBANI:  Your Honor, I'm sorry, if I

25   could just take my laptop and step out.  My client is
```

```
1   trying to give me some information that I'm trying to

2   correspond with.

3           THE COURT:  All right, how long do you need?

4           MR. HASBANI:  Five minutes.

5           THE COURT:  Take two.

6           MR. HASBANI:  Thank you.

7           (Pause in proceedings.)

8           THE COURT:  All right, what have you got?

9           MR. HASBANI:  It was purchased in a pool so

10  I don't know the amount paid for the loan specifically.

11          THE COURT:  So this is not about in any way

12  recouping what you've paid because you don't know or

13  your client doesn't know.

14          MR. HASBANI:  There's a contract, your

15  Honor, which allows us to enforce the contract.

16          THE COURT:  No, I get it.  But in terms of

17  settlement, it has nothing to do with making sure you

18  get back what you paid.  You just want to get every

19  penny you can, I get it.

20          MR. HASBANI:  Nobody prepares a business

21  model based on breaking out even, your Honor.  There's

22  overhead, there's time, all that's valuable.

23          THE COURT:  And that's something you think

24  I'm not aware of.  Okay, thank yuou.  Anything else

25  you'd like to tell me that you think I don't know
```

1  because it sounds like there are pretty basic things

2  I'm not aware of.

3         MR. HASBANI:  Just with regard to what I

4  stated before, I was off on the amounts paid.  The

5  amounts paid were roughly about $10,000 per year in

6  interest.  So it was a period of about eight years, so

7  it was roughly between $80,000 and $100,000.

8         THE COURT:  Guys, I get the feeling that

9  neither one of you is in a position to get to a point

10  where you're going to settle this case.  Where are you

11  in talking to each other?

12         MR. HASBANI:  Us as attorneys have been in

13  discussion, but considering that the defendants have

14  been out of the country, I guess, there hasn't been

15  significant talks with their attorney.

16         THE COURT:  All right, but you are where

17  you're going to be?

18         MR. HASBANI:  No, I definitely have some

19  wiggle room but at this point, I'd be bidding against

20  myself.  I don't even know what they're interested in.

21         THE COURT:  What are (ui).

22         MR. VILLANTI:  So basically, what he

23  indicated to me was, if they went down the mod route,

24  it would be -- he couldn't do realistically probably

25  more than $1,700 a month.  If it was a short payoff, he

1   could do let's say -- if it was today, it could be 60

2   but if you gave him like thirty to sixty days, he could

3   to up to 120.  That's the best he could do.

4          MR. HASBANI:  Okay, I can relay those to my

5   client.  These are the first counteroffers I'm hearing.

6   As far as we're aware, the property is worth about two

7   million dollars.  There's another mortgage on it worth

8   about a million and change, so there's plenty of equity

9   in the property.  I'll relay it to my client and as

10  soon as I hear back, I'll relay whatever counteroffer

11  that my client might have to counsel.

12         THE COURT:  They're available right now,

13  right?

14         MR. HASBANI:  Correct.

15         THE COURT:  Okay, so let's go.

16         MR. HASBANI:  Okay.

17         (Pause in proceedings.)

18         MR. HASBANI:  With regard to this kind of

19  payout, I think we're just way too far apart.  However,

20  with regard to the monthly payments, we can do

21  something somewhere in the realm of $2,500 a month with

22  an initial down payment of $5,000, five years payments

23  of interest only with a balloon payment at maturity.

24         MR. VILLANTI:  I mean, I can talk to my

25  client.  I'm pretty certain that he's not going to be

1  interested in an interest-only mod where he's going to

2  pay them tens of thousands of dollars for just interest

3  on the loan.

4        THE COURT:  Right, to stay in the house.

5        MR. VILLANTI:  Basically.  It doesn't -- it

6  wouldn't affect the principal balance at all.  I

7  suppose the hope would be that at the end of five

8  years, he would then refinance, because it's a balloon

9  at the end.  So it's just taking -- it's paying them up

10  to let's say -- I don't know from doing the math

11  quickly in my head but $90,000 on the hope that he can

12  refinance in five years?

13        THE COURT:  They're basically saying they

14  will rent you the house for $2,500 a month.

15        MR. VILLANTI:  Like I said, I'm happy to

16  call him but I'm pretty certain I already know what the

17  answer is.

18        THE COURT:  Okay.  Look, if you think we're

19  getting nowhere, that's fine.  You don't have to

20  settle.

21        MR. VILLANTI:  That's fine.

22        THE COURT:  Okay, so --

23        MR. HASBANI:  I do believe based on my

24  client's notes that the defendants at one point when

25  the demand letters were sent out, that they reached out

1  to the servicer and discussed possible reinstatement.

2  I mean, that's also an option.

3          MR. VILLANTI:  I don't have the

4  reinstatement figures.

5          MR. HASBANI:  I know I have them somewhere.

6  Reinstatement is approximately $285,000.

7          MR. VILLANTI:  Again, I'm happy to call him

8  but, again, if the most he can do in sixty days on a

9  payoff would be 120, I don't see how he could come up

10 with 280 to do a reinstatement.

11         THE COURT:  Look, you guys keep talking to

12 each other but I just think -- you're saying he can't

13 do and you're saying that --

14         MR. VILLANTI:  He can't take less.

15         THE COURT:  Not that they can't and that's

16 the thing.  We don't know if they paid anything

17 specifically for this but they don't care about -- they

18 just don't care if your guy is out on the street, they

19 want a certain amount of money.  Okay, that's their

20 right.

21         Let's talk about discovery.  You're going to

22 give him whatever he is going to get by Friday and

23 you're going to be bound by that in terms of your

24 counterclaim.

25         MR. VILLANTI:  I told him to give me

1   everything he has by Friday.

2           THE COURT:  Anything you're missing from the

3   plaintiff?

4           MR. VILLANTI:  Like I said, I have to review

5   everything.  I think there might be some -- only

6   because for example, I asked for all correspondence

7   between plaintiff and its predecessors and my clients,

8   and I got like ten letters from 2013.  This is a 2004

9   loan and there are no mortgage statements, there's no

10  anything else but like a few letters from 2013.

11          And also, for payment history, the only

12  payment history I got was the last few months that

13  they've had the loan but not the whole course of the

14  loan.  Just grazing through it today because like I

15  said, I got it yesterday, I noticed those things were

16  missing, so I assume there's going to be at least

17  those.

18          MR. HASBANI:  I can request --

19          THE COURT:  Why doesn't he have that

20  already?

21          MR. HASBANI:  This is what I have in my

22  possession currently.

23          THE COURT:  Obviously, that's not the

24  question.  Your responsibility to provide discovery on

25  behalf of your client is not limited to what you carry

```
 1   around in your pocket.  Why has your client not

 2   provided everything responsive to the requests?

 3            MR. HASBANI:  We've provided everything

 4   we've received from our predecessors and we have

 5   requested additional documents, if they're out there.

 6   Also, a lot of the documents that are being requested

 7   are within the possession of the defendant.  I mean,

 8   monthly invoice statements have been sent to them over

 9   the course of the loan.

10            THE COURT:  And you know that that's not an

11   excuse for fulfilling your obligations.  Look, you

12   don't just get to say, well, whatever we can get from

13   our predecessors.  This is your loan you're suing on.

14            MR. HASBANI:  Correct.

15            THE COURT:  Get him everything from your

16   client, from the predecessors, by Friday or you're

17   precluded.

18            MR. HASBANI:  Okay.  If I can have some more

19   time --

20            THE COURT:  Why?

21            MR. HASBANI:  It's going to be difficult

22   to --

23            THE COURT:  Yeah, it's difficult to do that

24   in a couple of days.  Why haven't you done what your

25   client is supposed to do?
```

```
1              MR. HASBANI:  We've been working --

2              THE COURT:  You're telling them to do what

3    they're supposed to do.  Why don't you have the same

4    obligation?

5              MR. HASBANI:  I have agreed to give him

6    until February 7th to respond.  I mean, those were the

7    dates that we both agreed upon.  It's been a court-

8    imposed deadline for Friday, which I haven't objected

9    to or agreed to.  But if I'm going to be bound by the

10   same deadline, it's going to be practically impossible

11   for me to get more than what I already have by Friday.

12             THE COURT:  It's practically impossible to

13   get it in two days.  You still haven't explained to me

14   why, in all these months that you've been prepared the

15   case, you haven't made sure that your client produces

16   what its required to produce.  You know what's going to

17   be needed.

18             MR. HASBANI:  We've reached out -- we've

19   reached out to the prior servicers.

20             THE COURT:  Have you issued a subpoena?

21             MR. HASBANI:  We are in the process of that,

22   issuing a subpoena to --

23             THE COURT:  So the answer is no, you have

24   not.

25             MR. HASBANI:  No, we have not.
```

```
1              THE COURT:  Why?

2              MR. HASBANI:  Because they just got back to

3    us on --

4              THE COURT:  What does it matter?  Look, you

5    never know if they're going to do it voluntarily or

6    not.  You have legal compulsion at your disposal.  Why

7    don't you use it?

8              MR. HASBANI:  Because they tend to do it

9    voluntarily considering it's our loan at this point.

10   However --

11             THE COURT:  February 7th, both sides, not a

12   day more.  You're precluded for anything that you don't

13   produce.  If you're hampered by something to prove your

14   case that the other side doesn't produce, come back to

15   me and I'll come up with an appropriate remedial

16   measure.

17             Guys, if you're going to have further cases

18   here, don't take it upon yourselves to decide which

19   deadlines you're going to comply with and which you're

20   going to blow off.  Got it?

21             MR. HASBANI:  Yes.

22             THE COURT:  Give me a status report by

23   February 8th, meaning you'll have everything by February

24   7th -- I'm sorry, February 8th is a Saturday, February

25   10th.  You'll have it by February 7th, you'll review it
```

1  quickly, you'll let me know if you've got what you need

2  or not.  Anything else for today?

3            MR. HASBANI:  No.

4            THE COURT:  And there are not going to be

5  any motions, right?

6            MR. VILLANTI:  I assume eventually --

7            MR. HASBANI:  Summary judgment.

8            MR. VILLANTI:  -- you're going to want to

9  move for summary judgment.

10           THE COURT:  But haven't you already missed

11 the deadline or aren't you going to?

12           MR. VILLANTI:  I believe the deadline is

13 February 5th, if I'm not mistaken.

14           THE COURT:  Right, and you're not going to

15 have your full record by then.  So why are you going to

16 bother with motion practice if you don't have a record

17 on which you can make a motion?

18           MR. VILLANTI:  I certainly doubt, especially

19 if we don't have the acceleration letter, that we're

20 going to move for summary judgment.

21           THE COURT:  Right.

22           And you're not going to if you don't have a

23 full record, right, or if you haven't provided full

24 discovery?

25           MR. HASBANI:  I hope to have provided full

 1  discovery by then, and then move for summary judgment

 2  based on what I've provided.

 3           THE COURT:  By when?  You just said February

 4  7th so you're planning to get past that deadline.

 5           MR. HASBANI:  Correct.

 6           THE COURT:  All right.  Look, if you've got

 7  a record by which you can -- on which you can,

 8  consistent with Rule 11, make a motion for summary

 9  judgment or start that process by February 5th, I can't

10  stop you, but I'm not extending that deadline because

11  nobody really benefits from that.

12           Anything else for today?

13           MR. HASBANI:  No.

14           THE COURT:  I'm sorry, one other thing.

15  When is your joint pretrial order due?  I just want to

16  make sure you get that in on time.

17           MR. VILLANTI:  That would be March 9th, your

18  Honor.

19           THE COURT:  March 9th, okay.  So you'll get

20  that in by then.  All right, thank you folks.

21           MR. VILLANTI:  Thank you, your Honor.

22           MR. HASBANI:  Thank you, your Honor.

23                  *  *  *  *  *  *  *

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct

19     transcript from the electronic sound recording of the

20     proceedings in the above-entitled matter.

21

22

23

24

25     ELIZABETH BARRON                    February 20, 2020